**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT A. CATALFANO, *individually and on behalf of all others similarly situated*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 17-cv-5230 |
| v. | ) ) | Hon. Charles R. Norgle |
| SEARS HOLDING CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiffs Robert A. Catalfamo and Lavarita D. Meriwether ("Plaintiffs") individually,

derivatively on behalf of the Sears Holding Savings Plant ("Sears Plan"), and alternatively on

behalf of all other similarly situated participants and beneficiaries ("Participants") of the Sears

Holdings 401(k) Savings Plan Master Trust (the "Master Trust"), filed this five count

consolidated Amended Complaint on October 6, 2017, bringing this putative class action against

Defendants Sears Holdings Corporation ("Sears"), Sears Chief Executive Officer Edward S.

Lampert ("Lampert"), Sears Holdings Corporation Administrative Committee, (the

"Administrative Committee"), member of the Administrative Committee Michael O'Malley

("O'Malley"), Sears Holdings Corporation Investment Committee (the "Investment

Committee"), and other fiduciaries of the Master Trust including company officers, directors,

and employees who were fiduciaries of the Sears Holdings Saving Plan between August 22,

2014 to present ("John Does 1-20"), (collectively "Defendants") for alleged violations of the

Employee Retirement Income Security Act of 1974 ("ERISA"), as codified at 29 U.S.C. § 1001

*et seq*. Before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons stated, the motion to dismiss is granted.

## I. BACKGROUND

### A. Investment Plans

The Master Trust, sponsored by Sears, was established for the safekeeping of the Savings Plans'[1] assets and to commingle the investments of the Savings Plans' assets. The Sears Plan is a defined contribution retirement saving plan, for eligible employees of Sears and subsidiaries and affiliates thereof. The purpose of the Sears Plan was to provide Participants with the opportunity to save for retirement. The Sears Plan provided fifteen different investment funds, including the Sears Holdings Corporation Stock Fund (the "Sears Stock Fund")—an employee stock ownership plan ("ESOP") invested solely in Sears common stock[2] ("Sears Stock"). Participants had the opportunity to invest in the Sears Stock Fund; however, there was no requirement for Participants to invest in the Sears Stock Fund. During the Class Period, no more than 1.75% of the Sears Plan's assets were invested in the Sears Stock Fund. Information was available. Participation was voluntary.

### B. Parties

Plaintiffs are former Sears employees and Participants in the Master Trust, who held Sears Stock in their respective individual plan accounts. The putative class includes those Participants of the Master Trust, who invested from August 22, 2014, to present (the "Class Period"). Defendant Sears is a Delaware corporation headquartered in Hoffman Estates Illinois and is the named fiduciary of the Sears Plan. Defendant Lampert began to serve as the CEO of

---

[1] The Sears Holding Savings Plan and the Sears Holdings Puerto Rico Savings Plan are collectively referred to as the ("Savings Plans").
[2] The Sears common stock was traded on the New York Stock Exchange under the ticker "SHLD".

Sears on February 1, 2013, and also serves as the Chairman of the Company's Board of Directors. Lampert is a named fiduciary of the Sears Plan. Defs.' Mot. to Dismiss, Ex. 1. Sears Holding Savings Plan, Art. 13.1(a) ("Sears Savings Plan"). See Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 505 (7th Cir. 2013) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). The Administrative Committee is a named fiduciary of the Sears Master Trust and it is respobsible for the Administration of the Sears Plan. Sears Savings Plan Art. 13.1(b). Defendant O'Malley served on the Administrative Committee during the Class Period. John Doe defendants are other members of the Administrative Committee who are presently unknown to Plaintiffs. The Administrative Committee, its member John Does, and O'Malley are hereinafter referred to as (the "Administrative Committee Defendants"). The Investment Committee is a named fiduciary of the Sears Plan and has the responsibility for the investment of assets of the Sears Plan held in the Master Trust. Sears Savings Plan Art. 13.1(c). Other John Doe Defendants are members of the Investment Committee who are presently unknown to Plaintiffs. The Investment Committee and its member John Does are hereinafter referred to (the "Investment Committee Defendants").

## C. Pertinent Facts

Plaintiffs assert that based on information available to the public, it was evident that Sears Stock had become unduly risky and was no longer a prudent investment option during the Class Period. Plaintiffs predicate this claim upon the following, *inter alia*: Sears had not had a profitable year since 2011; Sears Stock began predictably declining in 2010; Sears' poor financial health regularly forced Sears to divest its valuable assets to pay operation and interest expenses; Sears' continually increasing debt to equity ratio; and the market price of Sears Stock fell from $30.82 on August 22, 2014, to $7.29 on October 5, 2017,—a decline of over 76.3%. As a result, Plaintiffs

claim, that Defendants had no reasonable basis to believe there would be a turn-around in the performance of the Sears Stock Fund, and as such, permitting the Sears Plan and Master Trust to continue to purchase and hold shares of Sears Stock was an abrogation of their responsibility to systematically monitor the ongoing prudence of the Savings Plans' investment options. This abrogation resulted in Defendants violating their fiduciary duties owed under ERISA. In or around September 2016, Participants were informed that effective January 1, 2017, the Sears Stock Fund would be closed to new investments. Defendants do not dispute the price decline.

Count I alleges Sears, the Administrative Committee, and the Investment Committee ("Prudence Defendants") breached their fiduciary duty under ERISA § 404(1)(1)(B), by failing to monitor the Sears Stock fund and imprudently managing the Master Trust's assets invested in the Sears Stock Fund. Count II alleges Defendants breached their duty of loyalty and exclusive purpose under 29 U.S.C. § 1104(a)(1)(A). Count III alleges Sears and Lampert failed to Adequately monitor other fiduciaries in violation of ERISA § 404. Count IV alleges Lampert violated ERISA § 406(b)(1) through prohibited transactions. Finally, Count V alleges co-fiduciary liability by Defendants.

## II.     ANALYSIS

### A.  Standard of Review

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007), not the merits of the suit. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th

Cir. 2012) (quoting <u>Twombly</u>, 550 U.S. at 556). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' To rise above the 'speculative level' of plausibility, the complaint must make more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" <u>Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP</u>, 861 F.3d 644, 649 (7th Cir. 2017) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in a plaintiff's complaint and draws all reasonable inferences in his favor. <u>Burke v. 401 N. Wabash Venture, LLC</u>, 714 F.3d 501, 504 (7th Cir. 2013) (citations omitted). "[A] a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." <u>Indep. Trust Corp.</u>, 665 F.3d at 935.

## B. Count I Fails to Meet the Pleading Requirements of <u>Dudenhoeffer</u>

In Count I, Plaintiffs allege that Sears, the Administrative Committee, and the Investment Committee ("Prudence Defendants") failed to monitor the Sears Stock Fund and prudently manage the Master Trust's assets invested in the Sears Stock Fund. Plaintiffs claim this failure amounts to a breach of fiduciary duty in violation of ERISA § 404(a)(1)(B).

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 90 (1983). The duty of prudence requires a pension plan fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 404(a)(1)(B). As the Supreme Court has noted, an ERISA

fiduciary's duty is "derived from the common law of trusts." <u>Tibble v. Edison Int'l</u>, 135 S. Ct. 1823, 1828 (2015). "Under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." <u>Id.</u> "The test for determining whether a fiduciary has satisfied his duty of prudence is whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." <u>Hunter v. Caliber Sys., Inc.</u>, 220 F.3d 702, 723 (6th Cir. 2000).

Congress established ESOPS, a special type of ERISA plan, that are designed to invest primarily in qualifying employer securities, rather than to diversify across securities of many companies. <u>Pfeil v. State St. Bank & Tr. Co.</u>, 806 F.3d 377, 380 (6th Cir. 2015) (citing 29 U.S.C. § 1107(d)(6)(A)). ESOP fiduciaries have a statutory exemption from some of the duties imposed on ERISA fiduciaries. "[A]n ESOP fiduciary is not obliged under 29 U.S.C. §1104(a)(1)(C) to diversify the investments of the plan so as to minimize the risk of large losses or, under 29 U.S.C. §1104(a)(1)(B), to act with the care, skill, prudence, and diligence of a prudent man insofar as that duty requires diversification. <u>Fifth Third Bancorp v. Dudenhoeffer</u>, 134 S. Ct. 2459, 2466 (2014) (internal quotations omitted). The Supreme Court in <u>Dudenhoeffer</u> stated that with regards to prudence, "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over or undervaluing the stock are *implausible as a general rule*, at least in the *absence of special circumstances*." <u>Id.</u> at 2471 (emphasis added). "It is reasonable to presume that most investors—knowing that they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information—will rely on the security's market price as an unbiased assessment of the security's value in light of all public information." <u>Halliburton Co. v. Erica P. John Fund, Inc.</u>, 134

S. Ct. 2398, 2411 (2014) (quoting <u>Amgen Inc. v. Conn. Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 462 (2013)).

Plaintiffs argue that <u>Dudenhoeffer</u> is not pertinent to the Court's analysis in this case because their claims are distinguishable from those in <u>Dudenhoeffer</u>. More specifically, Plaintiffs argue that they do not allege the ERISA violations that <u>Dudenhoeffer</u> addressed, i.e. overvaluation of stock in the market. Rather, Plaintiffs argue that Defendants imprudently monitored the Stock Fund, which had become an unduly risky investment due to the ongoing decline of the value of Sears Stock. In sum, Plaintiffs assert that claims for imprudent retention of a risky investment are brought under <u>Tibble</u>, and such claims do not require the "special circumstance" rule, set forth in Dudenhoeffer. The Court disagrees.

The Court does not find that Tibble prevents or changes the pleading requirements for prudence claims involving ESOPs. <u>See</u> <u>Allen v. GreatBanc Tr. Co.</u>, 835 F.3d 670, 678 (7th Cir. 2016) (involving a breach of prudence claim where the court cited <u>Tibble</u> in regards to the duty to monitor investments and remove imprudent ones). In <u>Allen</u>, the court found that the district court mistakenly applied <u>Dudenhoeffer</u> but not because <u>Dudenhoeffer</u> is inapplicable to claims regarding an ERISA fiduciary's ongoing duty to monitor under <u>Tibble</u>. Rather, the case involved private stocks and <u>Dudenhoeffer</u> only applies to public stocks). Furthermore, aside from the requirement under trust law to continually monitor investments as stated in <u>Tibble</u>, the Court does not find <u>Tibble</u> instructive in evaluating Plaintiffs' breach of prudence claims.

Neither the facts nor the issues presented in <u>Tibble</u> are analogous to those present here. The plaintiffs' allegations in <u>Tibble</u> did not pertain to ESOPS or the drop in an employer's stock value. 135 S. Ct. at 1826. Rather, the allegations pertained to defendants acting imprudently by offering six higher priced retail-class mutual funds as plan investments when materially identical lower

priced institutional-class mutual funds were also available. Id. Additionally, the issue addressed by the Court in Tibble is also not common to the one presented here. In Tibble, the court considered the Ninth Circuit's application of ERISA's statutory limitations period. The Court found that the Ninth Circuit erred when it failed to consider whether defendants breached their continuing duty to monitor investments and remove imprudent ones before it applied the 6-year statutory period of limitations. Id. at 1829. The Court, however did not address whether there was a breach of fiduciary duty. Id. ("We express no view on the scope of [defendants'] fiduciary duty in this case.").

Contrary to Plaintiffs' contention, the facts underlying the claims in Dudenhoeffer are nearly identical to those here. The complaint in Dudenhoeffer alleged:

> [T]hat Defendants knew or should have known that Fifth Third stock *was too risky*, that they should have *stopped further investment* of Plan assets in Fifth Third stock, and that they should have divested the Plan of Fifth Third stock. The complaint alleges that the price of Fifth Third stock declined 74% from the beginning of the class period, July 19, 2007, through September 18, 2009.

Dudenhoeffer v. Fifth Third Bancorp, 757 F. Supp. 2d 753, 755 (S.D. Ohio 2010) (emphasis added). These allegations are analogous to Plaintiffs here, i.e. Sears Stock declined through the class period and Defendants should have prevented further investment due to the risk.

Additionally, courts outside of the Seventh Circuit have looked at cases with allegations similar to Plaintiffs' here and applied the "special circumstances" pleading requirements of Dudenhoeffer. In each case, the court held that the plaintiffs' allegations were insufficient under Dudenhoeffer to plead a breach of prudence claim based on public information.

In Rinehart v. Lehman Brothers Holdings Inc., the plaintiff argued that the defendant breached its duty of prudence by "continuing to permit investment in Lehman stock in the face of circumstances arguably foreshadowing its eventual demise." 817 F.3d 56, 62 (2d Cir. 2016). The plaintiff "attempt[ed] to plead around [Dudenhoeffer] by saying that their claims concern

excessive risk and therefore are not covered by [Dudenhoeffer], which [p]laintiffs argue dealt only with claims concerning market value." Id. at 65-66. The court stated that such "purported distinction between claims involving 'excessive risk' and claims involving 'market value' is illusory" and that Dudenhoeffer applied to risk-based claims. Id. at 66. The Court found that the fiduciary's reliance on Lehman's market price shielded it from all allegations of imprudence based upon public information, absent special circumstances, which the plaintiff failed to allege. Id. The court held that "[p]laintiffs have failed to plausibly plead that the defendants breached their fiduciary duties under ERISA by failing to recognize the imminence of Lehman's collapse. Id. at 68 (emphasis added).

The Sixth Circuit has also applied Dudenhoeffer to a breach of prudence claim involving a defendant's continued investments into an ESOP. Saumer v. Cliffs Natural Resources, Inc., 853 F.3d 855 (6th Cir. 2017). In Saumer, the defendant's stock lost 95% of its value between 2011 and 2015, compared to a roughly 50% gain for the broader market during the same period. Id. at 858. Plaintiffs made an almost identical argument as Plaintiffs' argument here, contending that publicly available information revealed the defendant's declining revenues, high operating costs, and unmanageable debt; and that, as a result, the fiduciary's decision to invest in Cliffs stock was imprudent. Id. at 859-60. In applying Dudenhoeffer, the court "reject[ed] plaintiffs' argument that [defendant's] risk profile exceeded the reasonable bounds for a retirement option." Id. at 862. The court affirmed the district court's decision to dismiss the complaint for plaintiffs' failure to state a breach of fiduciary duty claim under ERISA based on retention of the employer's stock in light of publicly available information about the employer's risk profile. Id. at 858; see also Coburn v. Evercore Trust Co., N.A., 844 F.3d 965, 971 (D.C. Cir. 2016) (holding that Dudenhoeffer applied when the plaintiffs claimed that the defendant acted imprudently in continuing to hold J.C. Penney

common stock after it became increasingly and excessively risky); In re Citigroup Erisa Litig., 104 F. Supp. 3d 599, 617 (S.D.N.Y. 2015) (dismissing complaint alleging breach of the duty of prudence for failure to allege special circumstances under Dudenhoeffer); Pfeil v. State St. Bank & Trust Co., 806 F.3d 377 (6th Cir. 2015) (applying the prudent-process standard and citing to Tibble, but still holding that Dudenhoeffer applied to the plaintiffs' claims and requesting allegations of special circumstances) cert denied 136 S. Ct. 2511 (2016).

Accordingly, the Court concludes Plaintiffs are required to allege special circumstances under Dudenhoeffer. Dudenhoeffer was based on the same circumstances as alleged here—that Defendants failure to remove imprudent publicly traded stock based on publicly available information was a breach of their duty of prudence.

Dudenhoeffer requires Plaintiffs to point to "special circumstance affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information." 134 S. Ct. at 2472. In its misplaced reliance on Tibble, Plaintiffs fail to allege in the Amended Complaint or address in their Response any such special circumstance that rendered reliance on the market price imprudent, such as fraud, improper accounting, or illegal conduct that resulted in Defendant's stock to trade at an inflated price. See Smith v. Delta Air Lines, 619 F. App'x 874, 876 (11th Cir. 2015) (holding that the plaintiffs' claims that the "fiduciaries imprudently invested in Delta securities in the face of disappointing financial performance, loss in competitive advantage, and concerns about Delta's ability to survive in the industry" were not sufficient to state a claim under Dudenhoeffer, nor did such claims constitute special circumstances. Consistent with aforementioned cases, Plaintiffs allegations of poor financial

forecasts, decreasing stock value, or mounting debt do not constitute special circumstances under Dudenhoeffer.[3] Accordingly, Count I is dismissed without prejudice.

## C. Counts III and V Fail as Derivatives of Count I

Counts III and V allege failure to monitor against Sears and Lampert and co-fiduciary liability claims against all Defendants. However, because Counts III and V are derivative of Count I, both are dismissed. See Rinehart, 817 F.3d at 68, ("Plaintiffs cannot maintain a claim for breach of the duty to monitor absent an underlying breach of the duties imposed under ERISA."); Brown, 628 F.3d at 461 (holding that monitoring claims could be dismissed where they are derivative of insufficiently pled breach of the duty of prudence claims); In re Target Corp., 275 F. Supp. 3d at 1092, ("[C]laim of co-fiduciary liability must co-exist with some breach by a fiduciary of their duties under ERISA."); In re ING Groep, N.V. ERISA Litig., 749 F. Supp. 2d 1338, 1351-52 (N.D. Ga. 2010) (holding same).

## D. Count II Fails to Allege a Breach of Loyalty

Count II alleges a breach of duty of loyalty by Defendants. ERISA requires that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104(a)(1). The duty of loyalty requires "that all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries." James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 448 (6th Cir. 2002) (internal quotations and citations omitted). Plaintiffs argue that Defendants breached their duty of loyalty for allowing investment of the assets of the Sears Plan in Sears Stock, despite knowing that such investment was imprudent; that Prudence Defendants had a conflict of interest because they

---

[3] See In re Citigroup ERISA Litig., 112 F. Supp. 3d 156, 159 (S.D.N.Y. 2015); Pfeil v. State St. Bank & Trust Co., 806 F.3d 377, 388 (6th Cir. 2015); Saumer v. Cliffs Natural Resources, Inc., 853 F.3d 855 (6th Cir. 2017); Rinehart v. Lehman Brothers Holdings Inc., 817 F.3d 56 (2d Cir. 2016); Coburn v. Evercore Trust Co., N.A., 844 F.3d 965, 971 (D.C. Cir. 2016).

owned Sears Stock; and Lampert made corporate decisions where he benefitted at the expense of the Participants, thus violating his fiduciary duty of loyalty. The Court disagrees.

### 1. Count II fails to the extent it is derivative of Count I

Despite Plaintiffs' argument that Count II is not a derivative claim of Count I, it is evident from the Amended Complaint that Count II is based predominantly on the argument that Loyalty Defendants acted imprudently as alleged in Count I. In effect, Plaintiffs plead that Lampert and Prudence Defendants breached their duty of loyalty by imprudently permitting further investment of the Sears Plan into Sears Stock. However, Plaintiffs failed to sufficiently plead the prudence claim in Count I; thus, they cannot rely on that breach as the basis for Count II. See Saumer v. Cliffs Nat. Res. Inc., 2016 WL 8668509, at *6 (N.D. Ohio, 2016) (rejecting plaintiff's duty of loyalty claim where it largely overlapped with the allegations that served as a basis for the breach of prudence claim) aff'd, 853 F.3d 855 (6th Cir. 2017); see also Brown v. Medtronic, Inc., 628 F.3d 451, 461 (8th Cir. 2010) (holding that duty of loyalty claims could be dismissed where they are derivative of insufficiently pled breach of the duty of prudence claims);

### 2. Plaintiffs fails to allege a conflict as it pertains to Prudence Defendants

To the extent that Count II is not derivative, Plaintiffs still fail to plead a breach of duty of loyalty. Without sufficient allegations of imprudence, Count II, as it refers to Prudence Defendants, distills down to Plaintiffs' assertion that Prudence Defendants have a conflict of interest due to their possession of Sears Stock. If such allegations were sufficient then "the purported conflict would exist for all corporate insiders, who are charged with managing the affairs of the corporation; it would deprive the plans of services of the most knowledgeable individuals." In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig., 756 F. Supp. 2d 330, 355 (S.D.N.Y. 2010); see also In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 479 (S.D.N.Y.

2005) (holding that the fact that a significant percentage of the defendants' compensation is in the form of stock is insufficient to allege a conflict of interest); In re Target Corp., 275 F. Supp. 3d at 1091 (holding same).

### 3. Plaintiffs fail to allege Lampert acted in his role as a fiduciary

Plaintiffs also allege Lampert has a conflict of interest due to his affiliates' activity—chiefly ESL Investment Inc. ("ESL") and Seritage Growth Properties Inc. ("Seritage"). Plaintiffs allege that Sears entered into a $500 million loan agreement with JPP, LLC and JPP II, LLC, which are controlled by ESL, Lampert's hedge fund. Those loans are allegedly guaranteed by Sears and secured by a first priority lien on 61 Sears' properties. Plaintiffs argue that as a result of the loans being secured by unencumbered Sears real estate, participants are being subordinated to the secured position of ESL in the event of bankruptcy. Additionally, Plaintiffs allege that Sears' valuable real estate was bought up by Lampert to create Seritage, a real estate investment trust that Sears spun off on November 30, 2015. Plaintiffs claim that these real estate purchases deprived the Sears Plan of the value of the real estate assets. Plaintiffs further assert that these business transactions benefitted Lampert and his affiliates at the expense of Plan participants in violation of Lampert's fiduciary duty under the Sears Plan.

Under ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). "[B]reaches of the duty of loyalty require proving: (1) that the defendants acted as fiduciaries, (2) they breached their fiduciary duties, and (3) the breach caused a loss to the plan. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

13

The first issue then is whether Plaintiffs has sufficiently alleged that Lampert owed a fiduciary duty under ERISA. An ERISA fiduciary are those "persons named as fiduciaries by a benefit plan" or "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993). Here, the Sears Plan states:

> The Chief Executive Officer of the Company shall have the responsibility of appointing and removing (with or without cause) (i) the members of the Administrative Committee, to which is allocated under the [Sears] Plan, and (ii) the members of the Investment Committee to which is allocated under the [Sears] Plan the overall responsibility for the investment of the [Master] Trust Fund.

Sears Holding Savings Plan, Art. 13.1(a). Accordingly, under the Sears Plan, Lampert's duty was to appoint and remove Administrative and Investment Committee members.

Determining Lampert's fiduciary duty under the Sears Plan does not end the Court's analysis. Rather, "the threshold question is whether the defendant was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Brooks v. Pactiv Corp., 729 F.3d 758, 765 (7th Cir. 2013) (citing Pegram v. Herdrich, 530 U.S. at 222). An ERISA fiduciary does not always wear the fiduciary hat. Larson v. United Healthcare Ins. Co., 723 F.3d 905, 917 (7th Cir. 2013). As discussed above, Lampert's fiduciary hat, as stated in the Sears Plan, was limited to appointing and removing committee members. Plaintiffs fails to allege how Lampert's corporate decisions to sell Sears' real estate, enter into loans, and other relevant conduct comes under Lampert's hat as a fiduciary under the Sears Plan.

Plaintiffs then attempts to broaden Lampert's fiduciary duty under the Sears Plan by alleging he had *de facto* control over the decisions made by the Administrative and Investment Committees. Without support, Plaintiffs allege that Lampert had final authority and control over

all plan decisions because the appointed Sears officers' jobs depended upon keeping Lampert satisfied. Such conclusory assertions are insufficient to extend Lampert's responsibilities beyond what is stated in the Sears Plan. See Howell v. Motorola, Inc., 633 F.3d 552, 563 (7th Cir. 2011) (stating where there was no sufficient evidence suggesting that the defendant exercised *de facto* control over the ERISA plan decisions through those appointed committee members, "the only serious question is whether [the defendant] acted irresponsibly in its choice of people for the committee or in its efforts to monitor those people.").

Plaintiffs argues that Lampert's business related decisions resulted in harm to Participants' interest in the Sears Plan. However, such allegations of harm are insufficient absent a corresponding fiduciary duty. Unlike a common law trustee, who "is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries, [u]nder ERISA … a fiduciary may have financial interests adverse to beneficiaries." Pegram v. Herdrich, 530 U.S. 211, 225 (2000) (citations omitted). "Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (*e.g.,* firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (*e.g.,* modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." Id.

In re WorldCom, Inc. ERISA Litig., is instructive on this point. 263 F. Supp. 2d 745 (S.D.N.Y. 2003). In WorldCom, the plaintiffs asserted that the defendant breached his duty of loyalty by allowing the company's stock to be offered as a plan investment while the defendants was participating in compensation programs that gave him a personal interest in maintaining a high price for the company stock. Id. at 467. The court held that allegations regarding fiduciaries possessing financial interests adverse to the beneficiaries are insufficient alone to state a breach

15

of loyalty. Id. at 468. Rather, Plaintiffs must allege the defendant's "personal investments caused him to take or fail to take any actions detrimental to the plan while he was wearing his fiduciary hat." Id. Accordingly, having failed to sufficiently plead that Lampert was acting in his fiduciary role, Plaintiffs' allegations that Lampert's decisions deprived Participants of their interest in valuable assets, causing financial injury, cannot stand alone and establish a breach of loyalty claim.

### E. Count IV Fails to Allege Lampert Acted as a ERISA Fiduciary

Finally, Count IV alleges Lampert engaged in prohibited transactions. Under ERISA, a fiduciary shall not deal with the assets of the plan in its own interest or for its own account. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). Plaintiffs allege that Lampert sold off valuable assets of Sears during the Class Period, which deprived Participants invested in the Sears Stock of their interests in these assets. Meanwhile, Lampert allegedly retained an interest in the assets. As discussed in Count II *supra*, Plaintiffs fail to allege that Lampert was acting as a fiduciary with respect to the transactions complained of. Such failure is sufficient to prevent Plaintiffs from adequately alleging a breach of 29 U.S.C. § 1106(b)(1). See Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 472 n.4 (7th Cir. 2007) (held that where the plaintiffs failed to allege that defendant was acting in his fiduciary duty when it engaged in the relevant transactions, the court did not need to address that count any further). Accordingly Count IV is dismissed.

### F. Plaintiffs Lack Standing to Bring Claims on Behalf of Participants of the Puerto Rico Savings Plan

Plaintiffs seek to bring this putative class action alternatively on behalf of participants of the Sears Holdings Puerto Rico Savings Plan ("Puerto Rico Plan"). "Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the

court is without authority to consider the merits of the action." <u>Freedom from Religion Found. v.</u> <u>Zielke</u>, 845 F.2d 1463, 1467 (7th Cir. 1988). "Whether a party has standing to bring a 'case or controversy' before the court is a question of law." <u>Winkler v. Gates</u>, 481 F.3d 977, 982 (7th Cir. 2007). "That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 40 n.20 (1976).

29 U.S.C. § 502 provides that a civil action may be brought by a *participant*, *beneficiary*, or *fiduciary* (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain any other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C.S. § 1132(a)(3) (emphasis added).

Defendants Lampert, the Administrative Committee, and the Investment Committee were all ERISA fiduciaries under the Sears Plan not the Puerto Rico Plan, and Plaintiffs do not allege that they were participants, beneficiaries, or fiduciaries of the Puerto Rico Plan. Accordingly, based on the facts alleged Plaintiffs do not have standing to pursue claims under the Puerto Rico Plan. See <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100-01 (2d Cir. 2005) ("The Supreme Court has construed § 502 narrowly to allow only the stated categories of parties to sue for relief directly under ERISA."); <u>Franchise Tax Board v. Construction Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action."); <u>see also</u> <u>In re Citigroup.</u>, 104 F. Supp. 3d at 613 (holding that plaintiffs who do

not claim to be participants, beneficiaries, or fiduciaries under an ERISA plan lack statutory standing).

## III.  CONCLUSION

Count I is dismissed without prejudice because Plaintiffs have failed to sufficiently allege special circumstances as required under <u>Dudenhoeffer</u>. Count III is dismissed without prejudice because it is a derivative of Count I and Plaintiffs have failed to plead an underlying breach. Count V is dismissed without prejudice for the same reasons as Count III. Count II is dismissed without prejudice because Plaintiffs fail to allege a conflict of interest against the Prudence Defendants and they have failed to allege that Lampert acted as a ERISA fiduciary when he engaged in the alleged injurious conduct described in the Amended Complaint. Count IV is dismissed without prejudice because Plaintiffs fail to allege Lampert acted as an ERISA Fiduciary. Finally Plaintiffs fail to properly allege standing to bring claims on behalf of participants of the Puerto Rico Plan. Accordingly, Defendants' motion to dismiss is granted; Plaintiffs' consolidated Amended Complaint is dismissed without prejudice.

IT IS SO ORDERED.

ENTER:

_Charles R Norgle_

CHARLES RONALD NORGLE, Judge

United States District Court

DATE: August 21, 2018

18